IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| JAVIER VILLARREAL, ) | |
| ) | |
| Plaintiff, ) | CASE NO. _____ |
| ) | |
| V. ) | ACTION FOR DAMAGES |
| ) | |
| MICHAEL SHANNON and V.I. TERMINAL ) | JURY TRIAL DEMANDED |
| SERVICES, LLC, ) | |
| ) | |
| Defendants ) | |
| _____) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW the Plaintiff Javier Villarreal, through undersigned counsel, and files his *Original Complaint* against Defendants Michael Shannon and V.I. Terminal Services, LLC, and states as follows:

1. Plaintiff is a resident of Corpus Christi, Texas, U.S.A.

2. Defendant Michael Shannon is a resident of the State of North Carolina and may be served with process at his last known address, 1 Legacy Oaks Place, #6104, Asheville, North Carolina, 28803.

3. Defendant V.I. Terminal Services, LLC (hereinafter "VITS") is, upon information and belief, a Virgin Islands LLC doing business in the Virgin Islands and may be served with process with by serving its registered agent for service of process at the following addresses: 1 Estate Hope, Christiansted, VI 00820 and 6002 Diamond Ruby, Suite 3, PMB#109, Christiansted, VI 00820.

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332 as there is complete diversity amongst the parties.

5. Venue is proper in this division as the accident that makes the basis of this lawsuit occurred in the St. Croix Virgin Islands.

6. According to the accident report, at approximately 11:50 P.M., on December 21, 2017, Plaintiff was a passenger in a 2017 Jeep Wrangler that was being driven by Defendant, Michael Shannon, on the Melvin Evans Highway on St. Croix, U.S.V.I., also known as Route 66, east of the East Airport Road intersection.

7. Defendant Shannon was travelling in an easterly direction of travel, however, at some point, he changed lanes and began operating the subject vehicle in the wrong lane of travel facing oncoming traffic.

8. While doing so, Defendant Shannon drove the Jeep Wrangler down the road and directly in the lane of traffic that a passenger vehicle, driven by Maurice Williams, was traveling. Defendant Shannon ultimately crashed, head on, into Maurice Williams.

9. During the collision, the passenger compartment of the jeep suffered severe crush and intrusion into the occupant survival space. The force of the collision crushed Plaintiff causing severe and debilitating injuries to his leg and back. As a result of the crash, and in addition to other injuries, Plaintiff has had to undergo numerous surgeries on both his leg and back. His past medical expenses related to his injuries sustained in the subject collision are astronomical and continue to accrue as Mr. Villarreal continues his treatment.

10. Prior to the crash, Defendant Shannon had been drinking alcoholic beverages during the afternoon and evening of December 21, 2017, in celebration of his impending departure for Christmas vacation, which was scheduled for the next day.

11. Defendant Shannon was driving a vehicle owned by Centerline Car Rental but was leased to Shannon's employer V.I. Terminal Services, LLC.

12. At all material times, Defendant Shannon was an employee of V.I. Terminal Services, LLC and was driving the vehicle with the permission of V.I. Terminal Services, LLC.

13. At all times relevant, V.I. Terminal Services, LLC was aware of Defendant Shannon's alcohol use on the date of the crash. Specifically, Defendant Shannon had been drinking alcoholic beverages with his supervisors at V.I. Terminal Services, LLC. Although his supervisors were aware that Defendant Shannon was intoxicated, they allowed him to continue to operate the Jeep Wrangler, rented by V.I. Terminal Services, LLC, the remainder of the day and into the evening.

14. Defendant VITS entrusted to Shannon the use of its rental vehicle from the first day of his employment on December 8, 2017 until after the accident of December 21, 2017.

15. At the time VITS entrusted Shannon to operate the Jeep Wrangler, Defendant Shannon did not maintain a valid drivers' license.

16. Additionally, on December 8, 2017, Defendant Shannon, via his Application for Employment VITS made him fill out, informed VITS that he had been convicted of the crime of driving while intoxicated in the State of Texas, for which he was imprisoned for a term of 4 years.

17. VITS, prior to the accident, took no action upon learning of Shannon's conviction and imprisonment for driving while intoxicated, nor did it restrict in any way his use of the rental vehicle during the time of his employment up to the time of his accident.

18. VITS, prior to the accident, did no investigation to determine the underlying facts regarding Shannon's conviction and imprisonment nor did it perform any screening or investigation to determine if Shannon was an appropriate and safe driver, or even if he was licensed to drive a vehicle.

19. Had VITS performed a basic investigation of Shannon's conviction and imprisonment for driving while intoxicated, such as obtaining the Texas records regarding same, VITS would have learned that Shannon had numerous previous convictions for driving while intoxicated, and that he had many traffic violations for driving at excessive rates of speed.

20. VITS knew, and had reason to know, that Shannon was likely to use the rental vehicle in a manner involving an unreasonable risk of physical harm to others, such as the Plaintiff, whom VITS should have expected would be endangered by Shannon's use of the vehicle.

21. After the accident Shannon went on Christmas vacation and returned to St. Croix to continue his employment with VITS on or about January 8, 2018.

22. On January 9, 2018, for the first time, VITS made Shannon fill out official VITS corporate forms as follows:

   a) An Acknowledgement of Company Vehicle Use Policy (two of them);
   b) A Motor Vehicle Records Release Consent Form;
   c) A Driver Questionnaire;
   d) A Non-Work Related Vehicle Agreement and Policy.

23. It was VITS policy that any employee who was permitted to use company vehicles, such as the rental vehicle involved in the accident complained of herein, had to fill out the above described forms prior to using any company vehicle.

24. VITS violated its policy by not requiring Shannon to fill out these forms at the time of his employment, but only after the accident, just after his return from Christmas break.

25. Had VITS followed its policy, and made Shannon fill out these forms at the inception of his employment, before they entrusted a vehicle to his use, it would have been able to confirm that Shannon was indeed a dangerous and incompetent driver.

26. After filling out the above described forms, Shannon was never allowed to drive a VITS vehicle.

27. Shannon was issued two citations for reckless driving as a result of the accident.

28. Shannon was issued a summons with the citations to appear in Court on March 8, 2018.

29. Shannon failed to appear to respond to the citations.

30. On the day after he was supposed to appear in Court, Shannon resigned from his job at VITS "for personal reasons" and left the Territory.

31. Upon information and belief, Shannon quit his job and left the Territory the day after he was due in Court because he feared he would be arrested for the crime of reckless driving. 20 V.I.C. Sections 492 and 544(a).

32. VITS was aware of the issuance of the citations, and had copies of same, prior to the March 8, 2018 court date.

33. VITS did nothing to ensure Shannon's appearance at Court on March 8, 2018, and facilitated his departure from the Territory by providing him with a one-way airplane ticket to leave.

34. Reckless driving is defined in 20 V.I.C. Section 492 as "the operation of a vehicle upon the public highways of this Territory in such a manner as to indicate either a willful or wanton disregard for the safety of person or property."

35. Shannon was in fact guilty of reckless driving as so defined the Virgin Islands Code.

## COUNT ONE
## SHANNON NEGLIGENCE

36. Paragraphs 1-35 are incorporated herein.

37. Defendant Shannon owed the Plaintiff a duty to maintain his vehicle in the proper lane of travel.

38. Defendant Shannon negligently breached that duty by driving in the wrong lane of travel.

39. Plaintiff suffered severe and disabling injuries as a result of the Defendant Shannon's negligence.

40. Plaintiff's injuries were proximately caused by the Defendant Shannon's negligence.

## COUNT TWO
## SHANNON GROSS NEGLIGENCE

41. Paragraphs 1-40 are incorporated herein.

42. Prior to the accident, Shannon knew he was on the wrong side of the road, in the wrong lane of travel.

43. Rather than immediately stopping his vehicle, making a U-turn or exiting the travel lanes of the highway, Shannon chose to continue travelling on the wrong side of the road, and up a blind hillside, travelling at highway speeds.

44. Shannon struck a vehicle as he crested the hill. Shannon was in the wrong lane of travel at the time of the collision.

45. Defendant Shannon's actions as described above were grossly negligent and reckless as defined by 20 V.I.C. Section 492

46. Plaintiff suffered severe and disabling injuries as a result of Defendant Shannon's gross negligence and reckless conduct.

47. Plaintiff's injuries were caused by the gross negligence and recklessness of Defendant Shannon.

## COUNT THREE
## VI TERMINAL SERVICES NEGLIGENCE

48. Paragraphs 1-47 are incorporated herein.

49. VITS owed Plaintiff a duty to not negligently entrust a vehicle to Shannon.

50. Defendant VITS was negligent in entrusting the rental vehicle to Shannon because it knew, and had reason to know, that Shannon's use of the vehicle involved an unreasonable risk of physical harm to persons such as Plaintiff and it should have expected that Plaintiff would be endangered by Shannon's use of the vehicle.

51. VITS was negligent in failing to follow its own procedures for determining if an employee was a safe driver prior to letting Shannon use its vehicle.

52. The negligence of VITS was a proximate cause of the accident and Plaintiff's subsequent severe and disabling injuries.

## COUNT FOUR

## VI TERMINAL SERVICES GROSS NEGLIGENCE

53. Paragraphs 1-52 are incorporated herein.

54. The actions of VITS as described herein were grossly negligent and reckless.

55. VITS' failure to follow its own procedures to ensure the employees it entrusted vehicles to, and its failure to follow up on Shannon's disclosure of a driving related criminal conviction, were grossly negligent, wanton and reckless. Moreover, VI Terminal's actions in allowing Defendant Shannon to continue operating the vehicle, that it had rented, after knowing Defendant Shannon had been drinking, is grossly negligent and a reckless disregard to the safety of the public and Plaintiff.

WHEREFORE, Plaintiff demands judgment in his favor for both compensatory and punitive damages suffered by the Plaintiff, which include medical costs in the past and in the future, pain and suffering in the past and in the future, loss of enjoyment of life in the past and in the future, loss of wages in the past and in the future, and for such other damages as proven at trial, and for all costs associated with this lawsuit.

**RESPECTFULLY SUBMITTED,**
This 8th Day of May, 2019

**McCHAIN MILLER NISSMAN**
Attorneys for Plaintiff

  /s/ Scot F. McChain
Scot F. McChain, Esq.
53A Company Street
Christiansted, USVI 00820
Tel: (340) 719-0601 Fax: (340) 719-0602